Joan FLORES, Plaintiff,

v.

David SAULPAUGH;  Timothy Price; and Saugerties Central School District, Defendants.

No. 1:99–CV–245.

United States District Court, N.D. New York.

Sept. 21, 2000.

Mainetti, Mainetti & D'Orazio, Kingston, NY (Marino D'Orazio, of counsel), for Plaintiff.

Mills Law Firm, LLP, Clifton Park, NY (Gregory S. Mills, of counsel), for Defendants Timothy Price and Saugerties Central School.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

Plaintiff Joan Flores ("Flores" or "plaintiff") brought this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681–1688 ("Title IX"), 42 U.S.C. §§ 1981, 1983, and 1988, and New York State's Human Rights Law ("HRL"), N.Y. Exec. Law § 296 (McKin-ney 1993 & Supp.1999), and Education Law, N.Y. Educ. Law § 3201–3201–a (McKinney 1995). Plaintiff alleges that she was sexually harassed by defendant David Saulpaugh ("Saulpaugh"), a teacher in Saugerties Central School District ("District") and the defendants retaliated against her for filing sexual harassment complaints. Plaintiff also asserts various common law claims. She seeks compensatory and punitive damages against all of the defendants.[1] Defendants Timothy Price ("Price") and the District (collectively referred to herein as "defendants") have moved for summary judgment, pursuant to Fed.R.Civ.P. 56.[2] Plaintiff opposes. Oral argument was heard on April 13, 2000 in Albany, New York. Decision was reserved.

## I. FACTS

The following facts are viewed in a light most favorable to the nonmovant plaintiff. In 1996, the plaintiff was a student at Saugerties Central High School ("Saugerties"). She was involved in the Alternative Education Program, a program for students who have received many suspensions. Saulpaugh was a teacher and plaintiff's Dean of Students.[3] Plaintiff alleges that beginning in 1996, while a student at Saugerties, Saulpaugh put his arms around her, brushed up against her chest, stated in front of other students that she would be his mistress one day, and dropped a pen and asked her to pick it up while she was wearing a short skirt. She also claims that he would excuse her absences or lateness only when she wore short skirts or tight clothing. Plaintiff did not report any of these incidents to anyone at the school

---

1. Municipal corporations are immune from punitive damages claims. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *United States ex rel. Graber v. City of New York,* 8 F.Supp.2d 343, 348–49 (S.D.N.Y.1998). Therefore, plaintiff's claim for punitive damages against the District is dismissed.

2. The plaintiff has withdrawn her causes of action based on 42 U.S.C. §§ 1981, 1983, and 1988, her Title IX claim against Price, and her claims pursuant to the HRL and Education Law. Therefore, this decision addresses only plaintiff's Title IX claim against the District and her common law claims.

In addition, it should be noted that the claims asserted against Saulpaugh have been discharged in bankruptcy. Accordingly, Saulpaugh must be dismissed as a defendant from this action.

3. Saulpaugh was a part time Dean of Students assigned to handle the behavioral and disciplinary problems of the students in the Alternative Education Program.

but did tell her mother, Linda Mayr ("Mayr" or "mother").

In January 1997, Mayr met with defendant Timothy Price ("Price"), the principal of Saugerties, to complain about Saulpaugh's inappropriate treatment of her daughter. Price said he would investigate her complaints. Price did not inform her of the district's Title IX grievance procedures. Price also did not inform the District's Title IX officer, Michael Piatek ("Piatek"), of the complaints against Saulpaugh by the plaintiff's mother.

On February 23, 1998, Mayr filed a formal Title IX sexual harassment charge against Saulpaugh alleging that he had been sexually harassing her daughter since 1996, and that his behavior had gotten worse since her daughter moved out of her home in October 1997. Piatek investigated the complaint. Although Piatek found that Saulpaugh's conduct did not rise to the level of sexual harassment, he found that his comments to Flores and other female students were inappropriate. He recommended that Saulpaugh be given training to better deal with students of both genders and be closely monitored by administration. Also around this time, Saulpaugh was removed as plaintiff's Dean.

On February 26, 1998, Flores and her mother filed a second sexual harassment complaint, this time against Assistant Principal Donald Farris ("Farris"), alleging that he breached confidentiality by indicating to two students at Saugerties that Flores was filing sexual harassment charges against him and asking them for statements. Flores also claims that Farris made her complaint against Saulpaugh public knowledge throughout the school. Piatek determined that while Farris used poor judgment and should not have approached students for statements, there was no basis to support a sexual harassment charge.

On March 3, 1998, Piatek verbally notified Saulpaugh that Mayr had filed a complaint of sexual harassment against him on behalf of her daughter. That same afternoon, Saulpaugh accused Flores of smoking in the bus circle and suspended her for five days. Plaintiff's mother filed a retaliation charge against Saulpaugh for this incident. Piatek determined that "[s]ince Mr. Saulpaugh had not been officially notified of the Sexual Harassment Complaint filed against him by Linda L. Mayr until after the smoking violation of Joan Flores, I find no basis for Mrs. Mayr's Retaliation Complaint." (Ashley Aff. Ex. R.) Mayr also filed two sexual harassment charges against Price in March of 1998 for failing to report her complaints to the Title IX officer. Both charges against Price were found to be without merit.

In October of 1998, Flores and her mother filed a charge of retaliation against Price, claiming that as a result of the sexual harassment charges which they had previously filed, Price had suspended the plaintiff four times. In addition, the District filed criminal charges of Criminal Trespass and Harassment against her. She contends that these charges were filed in retaliation for filing her sexual harassment complaints. From October of 1998 and for the remainder of her senior year in high school, Flores received home tutoring.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine

issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56; *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

### B. *Title IX Claim*

As a preliminary matter, the defendants first claim that the plaintiff has failed to present any evidence that she was subjected to any harassing behavior after January 1997.[4] However, in her February 23, 1998 sexual harassment complaint against Saulpaugh, Mayr alleges that the harassment of her daughter became worse after she moved out of Mayr's home. (Flores Aff. Ex. A.) In addition, Flores' affidavit provides several examples of continuing harassment by Saulpaugh which occurred after January 1997. For example, Flores alleges that after she moved out of her mother's house, Saulpaugh continued to put his arm around her and look at her in a sexual manner, commented that her appearance was not as good as she when she was living at home, and stated that she should find a more mature boyfriend. (Flores Aff. ¶¶ 15–21.) Accordingly, defendants' argument to dismiss plaintiff's Title IX claim on this basis is rejected.

The defendants next contend that the plaintiff's Title IX claim must be dismissed because she cannot establish that the District had actual notice of any alleged discrimination. For the reasons which follow, this contention is also rejected.

### 1. *Title IX's Notice Standard*

■ Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a).[5] "When a teacher sexually harasses a student, that teacher discriminates on the basis of sex in violation of Title IX." *Kracunas v. Iona College*, 119 F.3d 80, 86 (2d Cir.1997)(internal quotations omitted).

■ In order to establish that a school district is liable for the sexual harassment of a student by a teacher, a plaintiff must show that "an official who . . . has authority to address the alleged discrimination and to institute corrective measures on the [district's] behalf has actual knowledge of discrimination . . . and fails to adequately respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). Actual knowledge may be established by showing that an educational institution "possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Crandell v. New York College of Osteopathic Medicine*, 87 F.Supp.2d 304, 320 (S.D.N.Y.2000). However, actual knowledge of every incident of harassment is not required. *Id.*

Moreover, the official's response "must amount to deliberate indifference to dis-

---

**4.** Plaintiff did not notify any school official about the alleged sexual harassment by Saulpaugh until January 1997 when Mayr met with Price. Consequently, the school district could not have had actual notice of, and can-

not be held liable for, any incidents of harassment that occurred prior to that meeting.

**5.** The parties do not dispute that Saugerties is an educational institution which receives federal funding.

crimination." *Gebser*, 524 U.S. at 290, 118 S.Ct. 1989. In other words, the official must make "an official decision . . . not to remedy the violation." *Id.* A plaintiff does not need to prove that the defendant's action or inaction was taken "maliciously or sadistically for the very purpose of causing harm." *See Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir.1999)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Rather, deliberate indifference can be found "where the [defendant's] response to the harassment[,] or lack thereof[,] is clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

All education programs receiving federal financial assistance must designate at least one employee to investigate complaints of sexual harassment and must "adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints" of harassment. 34 C.F.R. § 106.8(a)-(b). Thus, Title IX's notice requirement is most obviously met when sexual harassment complaints are reported directly to the Title IX officer. However, a student will not necessarily be denied relief just because complaints were directed at an employee other than the one specified in the sexual harassment policy, as long as that employee is an official with the authority to take corrective measures. *See Crandell*, 87 F.Supp.2d at 320.

### 2. *Review of Plaintiff's Claim*

■ The parties do not dispute that Price is an official with authority to address the alleged harassment and institute corrective measures. Consequently, the only issues remaining are whether Price had actual notice of Saulpaugh's alleged harassment of plaintiff and, if so, whether his response amounted to deliberate indifference.

Mayr testified that in the January 1997 meeting with Price, she specifically mentioned Saulpaugh's sexual comments, touching, and innuendos, as well as the incident when he asked her daughter to bend over and pick up a pen, and the incident when he announced that one day Flores would be his mistress. (Mayr Dep. at 18–22.) Clearly then, at this meeting, Price was put on notice that Saulpaugh may have been sexually harassing Flores, and that her accusations should be investigated. The only remaining question then, is the adequacy of his response to Flores' accusations.

Plaintiff claims that after the January 1997 meeting, Price promised that he would investigate the matter, but instead did nothing. In fact, it was not until after the formal Title IX charge was filed in February 1998 that the school removed Saulpaugh as plaintiff's Dean. Plaintiff also claims that Price not only failed to notify either her or her mother regarding the Title IX complaint procedures the school district had in place, but also failed to notify the Title IX officer about her complaints. In fact, Mayr only learned that she could file a formal Title IX complaint after she called the New York State Education Department to complain about the District's failure to take any action.

Price testified that after his meeting with plaintiff's mother, he spoke with Saulpaugh on two occasions regarding his behavior toward female students. Price also testified that he observed Saulpaugh interacting with students for several weeks and asked other administrators if they had heard anything about any inappropriate behavior by Saulpaugh. (Price Dep. at 43.) However, contrary to this testimony, Saulpaugh testified that Price never spoke to him about the sexual harassment of a student, either in general or specific terms. (Saulpaugh Dep. at 77–83.) He also testified that the issue of sexual harassment or discrimination never arose during any meetings with Price, *Id.* at 79, that Price never spoke to him about any complaints by students or parents, *Id.* at 80, and that he never spoke to him about his interaction with female students, inappropriate or otherwise. *Id.* at 80–81. Thus, the discrepancies in the evidence create questions

of fact concerning whether Price's response, or lack thereof, to the plaintiff's mother's complaints was reasonable or amounted to deliberate indifference. Accordingly, summary judgment on plaintiff's Title IX claim is precluded.

### C. State Law Claims [6]

#### 1. Negligent training and supervision

■ The defendants claim that Flores cannot state a prima facie case of negligent training and supervision. In support of this contention, the defendants assert that there were no complaints of sexual harassment against Saulpaugh by plaintiff or any other students prior to January 1997 and therefore, defendants had no notice of an alleged problem. The defendants further allege that at the time of the events complained of, the District had a sexual harassment policy and after the January 1997 meeting with Mayr, Price conducted an investigation. After a formal complaint was registered in February 1998, the District's Title IX officer, Mr. Piatek, investigated the plaintiff's complaints. In light of this, the defendants claim that Flores cannot show that Price or Saulpaugh were negligently trained or supervised.

The plaintiff has come forward with evidence which precludes summary judgment on this issue. First, the defendants were on notice of a possible sexual harassment problem as a result of several complaints by the plaintiff and her mother, commencing in January 1997 and continuing with formal complaints lodged in February and March of 1998. Second, contrary to the defendants' claims that an investigation took place after plaintiff's and her mother's complaints, Saulpaugh testified that he was never approached or spoken to about his conduct toward female students. *Id.* at

77–83. Third, Price testified that he was not even aware of the terms of the District's written sexual harassment policy. (Price Dep. at 15.) Thus Price had not taken the time to even read the policy in effect at the time in order to become aware of the methods of handling complaints of sexual harassment by students and employees. Finally, the evidence shows that Farris breached the confidentiality of sexual harassment complaints by telling two students that the plaintiff brought a complaint of sexual harassment against him. This provides additional evidence that District employees were not adequately trained with respect to the sexual harassment policy or how to handle complaints.

All of the evidence, taken together in a light most favorable to the plaintiff, raises issues of fact concerning: (1) the adequacy with which Price and Saulpaugh were trained and supervised regarding sexually harassing behavior, the District's sexual harassment policy, and how to handle sexual harassment complaints; and (2) the adequacy of the defendants' response to plaintiff's complaints of sexual harassment. Accordingly, summary judgment of plaintiff's negligent training and supervision claim must be denied.

#### 2. Vicarious liability [7]

■ "The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment." *Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933, 715 N.E.2d 95, 96, 693 N.Y.S.2d 67, 68 (1999); *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 391 N.E.2d 1278, 1281, 418 N.Y.S.2d 300, 302 (1979). School districts may be held vicariously liable for

---

6. The defendants move for dismissal of plaintiff's claim for "infliction of emotional distress." (Compl. ¶ 57.) The plaintiff failed to assert any opposition with regard to this issue. Therefore, plaintiff's fifth cause of action is dismissed.

7. The District alleges that it cannot be held vicariously liable for Price's actions because plaintiff's allegations against Price lack merit. However, since questions of fact exist concerning the propriety of Price's actions, summary judgment must be denied with respect to plaintiff's claim of vicarious liability with respect to Price.

torts committed by an employee. *Murray v. Watervliet City Sch. Dist.*, 130 A.D.2d 830, 515 N.Y.S.2d 150, 151 (3d Dep't 1987).

██ "An act falls within the scope of an employee's duties when the employee is 'doing his master's work, no matter how irregularly, or with what disregard of instructions.'" *Id.* at 831, 515 N.Y.S.2d 150, 152 (quoting *Jones v. Weigand*, 134 A.D. 644, 645, 119 N.Y.S. 441, 443 (2d Dep't 1909)). However, if an employee commits a tort for "personal motives unrelated to the furtherance of the employer's business," there is no respondeat superior liability. *Island Associated Coop. v. Hartmann*, 118 A.D.2d 830, 831, 500 N.Y.S.2d 315, 316 (2d Dep't 1986); *Mataxas v. North Shore Univ. Hosp.*, 211 A.D.2d 762, 763, 621 N.Y.S.2d 683, 684 (2d Dep't 1995) *see, e.g., Judith M.*, 93 N.Y.2d at 933, 715 N.E.2d at 96, 693 N.Y.S.2d at 68 (holding that a hospital was not vicariously liable for sexual abuse by an orderly); *Mary KK v. Jack LL*, 203 A.D.2d 840, 841, 611 N.Y.S.2d 347, 348 (3d Dep't 1994)(holding that a school district was not liable for sexual molestation of plaintiff's daughter by a teacher even though the acts occurred on school property and during school hours). Further, for respondeat superior to attach, the employees acts, whether intentional or negligent, must be generally foreseeable and "a natural incident of the employment." *Riviello*, 47 N.Y.2d at 304, 391 N.E.2d at 1282, 418 N.Y.S.2d at 303.

██ The District claims that it cannot be held vicariously liable for Saulpaugh's actions because his conduct fell outside the scope if his employment. The plaintiff argues that vicarious liability should be imputed to the District because Saulpaugh was directed "to be creative in disciplining Alternate Education Students." (*See* Flores Aff. Ex. I at 2.) As such, plaintiff contends, Saulpaugh "was operating under 'different' rules." (Pl.'s Mem. of Law at 14.) However, assuming that Saulpaugh was sexually harassing Flores, it is clear that such harassment was undertaken for purely personal motives and not in furtherance of the District's business. Further, it

strains credulity that sexual harassment of a student can be considered a "natural incident" of a teacher's employment. Finally, even assuming that Saulpaugh was given more latitude with respect to disciplining Alternative Education students, this does not operate to make Saulpaugh's conduct foreseeable. It is hardly foreseeable that creative discipline could be equated with sexual harassment. Therefore, plaintiff's claim for vicarious liability on behalf of the District for Saulpaugh's conduct must be dismissed.

### III. *CONCLUSION*

Issues of fact exist which precludes summary judgment on plaintiff's Title IX claim against the District as well as her claims of negligent training and supervision against the District and Price. However, the District cannot be held vicariously liable for Saulpaugh's conduct and also cannot be liable for punitive damages.

Accordingly, it is

ORDERED that

1. Plaintiff's claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1988 are DISMISSED;

2. Plaintiff's state law claims pursuant to New York State's Human Rights Law § 296 and Education Law § 3201–3201–a are DISMISSED;

3. Plaintiff's Title IX claim against defendant Timothy Price is DISMISSED; and

4. Defendant David Saulpaugh is DISMISSED as a defendant from this action; and it is further

ORDERED, that the motion for summary judgment by defendants Timothy Price and Saugerties Central School District is GRANTED in part and DENIED in part;

5. The defendants' motion is GRANTED to the extent that the following claims are DISMISSED:

a. Plaintiff's punitive damages claim against Saugerties Central School District

b. Plaintiff's vicarious liability claim against Saugerties Central School District with respect to David Saulpaugh's actions; and

c. Plaintiff's fifth cause of action for infliction of emotional distress;

6. The defendants' motion is DENIED in all other respects.

IT IS SO ORDERED.