**Inbal HAYUT, Plaintiff,**

v.

**STATE UNIVERSITY OF NEW YORK; State University of New York College at New Paltz; Alex Young, Individually; Richard Varbero, Individually; Gerald Benjamin, Individually; Lewis Brownstein, Individually, Defendants.**

**No. 1:00CV00725 HGM/RFT.**

United States District Court,
N.D. New York.

July 30, 2002.

Colin Law Office, (Lisa Fern Colin, Esq., William Martin, Esq. of counsel), White Plains, NY, for Plaintiff.

Epstein Becker & Green, P.C. (Kenneth J. Kelly, Esq., Lauren A. Malanga, Esq. of counsel), New York City, for Defendant Young.

Hon. Eliot Spitzer, Attorney General of the State of New York (June Steinberg, AAG of Counsel), Albany, NY, for Defendants State University of New York, SUNY College at New Paltz, Varbero, Benjamin and Brownstein, Office of the Attorney General.

### MEMORANDUM—DECISION AND ORDER

MUNSON, Senior District Judge.

### BACKGROUND

After completing two years of community college, plaintiff Inbal Hayut enrolled as

a student at defendant State University of New York College at New Paltz ("SUNY New Paltz"), a part of defendant State University of New York ("SUNY")(collectively "SUNY defendants") for the 1998–99 academic year. Upon enrollment, plaintiff registered for two classes with defendant Professor Alex Young ("Prof.Young")—International Politics and Multinational Corporations—which met every Tuesday and Thursday during the Fall 1998 semester.

Plaintiff alleges that Prof. Young sexually harassed her during class throughout the semester. This alleged harassment consisted of Prof. Young referring to plaintiff as "Monica Lewinsky" and making the following comments in front of the entire class: "How was your weekend with Bill?," "Be quiet, Monica. I will give you a cigar later," and "You are wearing the same color lipstick that Monica wears." Plaintiff maintains that in response to Prof. Young addressing her as "Monica," she told him several times that "Monica" was not her name. Furthermore, plaintiff alleges that Prof. Young's comments caused her great distress and interfered with her academic performance.

In November 1998, during the period of alleged harassment, plaintiff went to defendant Associate Dean Richard Varbero ("Dean Varbero") to complain about Prof. Young's conduct. Dean Varbero spent about an hour with plaintiff discussing her complaint and afterwards referred her to defendant Professor Lewis Brownstein ("Prof.Brownstein"), the Chair of Prof. Young's department. Upon leaving Dean Varbero's office, plaintiff decided to see Prof. Brownstein. Prof. Brownstein, however, was not in his office at the time. Plaintiff waited 10 or 15 minutes for him to return and eventually left. Plaintiff did not speak with Prof. Brownstein until the end of January 1999, when the fall semester had concluded and she was no longer registered in any of Prof. Young's classes. Upon learning about Prof. Young's allegedly offensive behavior, Prof. Brownstein asked plaintiff for a written complaint.

On February 11, 1999, a number of college officials including defendant Dean Gerald Benjamin ("Dean Benjamin"), Dean Varbero, and Prof. Brownstein attended a meeting held to discuss Prof. Young's conduct. On February 16, 1999, plaintiff delivered her written complaint to Prof. Brownstein's office. The following day, February 17, 1999, Dean Benjamin, Dean Varbero, and Prof. Brownstein met with Prof. Young to address plaintiff's complaint. On March 18, 1999, Prof. Young tendered his letter of resignation, which was accepted by college officials.

During the middle of the Spring 1999 semester, plaintiff left SUNY New Paltz. Plaintiff received failing grades in all of her courses for that semester because she did not formally withdraw from school. Prior to being allowed to continue her studies at Pace University, plaintiff had to complete a year of remedial education.

On February 2, 2000, plaintiff commenced the instant action in the Southern District of New York against defendants pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681–1688, 42 U.S.C. §§ 1983 and 1988, and various state laws including the New York State Human Rights Law, Executive Law § 296 ("HRL"). She asserted causes of action for sex discrimination, due process and equal protection violations, state constitutional tort, ministerial neglect, defamation, and intentional infliction of emotional distress. Prof. Young moved to dismiss all claims against him pursuant to Federal Rules of Civil Procedure 12(b)(6). The other defendants moved for the judgments on the pleadings pursuant to Federal Rules of Civil Procedure 12(c). This court granted in part and denied in part

Prof. Young's motion to dismiss and granted in part and denied in part the other defendants' motion for judgment on the pleadings. The Court allowed plaintiff to proceed with respect to the following claims: (1) § 1983 Federal Equal Protection claim against Prof. Young, Prof. Brownstein, Dean Varbero, and Dean Benjamin; (2) Title IX claim against SUNY and SUNY New Platz; (3) state constitutional tort claim against Prof. Young, Prof. Brownstein, Dean Varbero, and Dean Benjamin; (4) New York Human Rights Law claim against Prof. Young, Prof. Brownstein, Dean Varbero, and Dean Benjamin; (5) ministerial neglect claim against Prof. Brownstein, Dean Varbero, and Dean Benjamin.

Currently before this court are defendants' motions for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to these motions.

## DISCUSSION

### I. *Standard for Summary Judgment*

The standard for summary judgment is well-settled. Rule 56 of the Federal Rules of Civil Procedure allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1). A motion for summary judgment may be granted when the moving party carries its

burden of showing that no triable issues of fact exist. *See Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See id.; United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. When reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *See id.* at 250–251, 106 S.Ct. 2505.

### II. *Fourteenth Amendment Equal Protection Claim*

#### A. *Fourteenth Amendment Equal Protection Claim Against Prof. Young*

■ Plaintiff, pursuant to section § 1983, alleges that Prof. Young violated the Equal Protection Clause of the Fourteenth Amendment by sexually harassing her. In order to state a claim for relief under § 1983, a plaintiff must prove (1) that the conduct complained of occurred "under color of state law" and (2) that this conduct deprived plaintiff of "rights, privileges, or immunities secured by the U.S. Constitution or federal law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

### 1. *Under Color of State Law*

■ A person acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). In the present case, as the result of his employment relationship with SUNY New Paltz, an institution of New York State, Prof. Young's actions as a tenured University Professor are clothed with color of state law and as such satisfy the first element of a § 1983 cause of action. *See Gonzalez v. Kahan,* 1996 WL 705320 at *2 (E.D.N.Y.1996).

### 2. *Deprivation of Rights, Privileges, or Immunities*

Since it is necessary to establish a violation of a federally protected right to satisfy the second element of a § 1983 cause of action, plaintiff asserts that Prof. Young violated the Equal Protection Clause of the Fourteenth Amendment by sexually harassing her. However, in order to succeed on her § 1983 claim based on sexual harassment, plaintiff must offer sufficient proof that Prof. Young's conduct was (1) intentional harassment; (2) based on sex; (3) done under color of state law, and (4) sufficiently extensive to render the environment hostile. *See Cohen v. Litt,* 906 F.Supp. 957, 964 (S.D.N.Y.1995).

■ In proving sexual harassment, a plaintiff must produce evidence that her educational experience was "permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions" of her education and create a sexually hostile environment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). This standard requires an objectively hostile or abusive environment, as well as the victim's subjective perception that the environment is abusive. *See Richardson v. New York State Dept. of Corr. Service,* 180 F.3d 426, 436 (2d Cir.1999).

From this court's review of the record, it is clear that plaintiff viewed her environment as hostile and abusive. Therefore, the remaining question before this court is whether the environment was "objectively hostile," i.e., whether a reasonable person in plaintiff's circumstances would find the educational environment so severe, pervasive, and objectively offensive as to undermine plaintiff's educational experience and deny her equal access to an institution's resources and opportunities. *See Davis v. Monroe Co. Bd. of Educ.,* 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

■ Whether the environment is hostile or abusive can be determined only by looking at the totality of circumstances. *See Raniola v. Bratton,* 243 F.3d 610, 616 (2d Cir.2001). In determining whether a plaintiff has established that an environment is hostile or abusive, a court is particularly concerned with (1) the conduct's severity; (2) the frequency of the abusive conduct; (3) whether it is physically threatening or humiliating rather than merely offensive; and (4) whether it unreasonably interferes with the plaintiff's performance. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■ A court may find alleged conduct to be frequent and severe if the plaintiff can demonstrate that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted as to have altered conditions of plaintiff's working or educational environment. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000); *Williams v. Bd. of Hudson River/Black River Regulat-*

*ing Dist.,* 2001 WL 1217199 at \*1 (N.D.N.Y.2001)(McCurn, S.J.)(summary judgment denied where defendant asked plaintiff out on dates, started rumors that he was sexually involved with the plaintiff, and touched her at the office or at work-related events). However, sporadic use of abusive language, gender related jokes, or occasional episodes of harassment will not constitute actionable hostile educational environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Gonzalez v. Kahan,* 1996 WL 705320 at \*1–3 (E.D.N.Y.1996)(defendant granted summary judgment where plaintiff failed to establish hostile environment sexual harassment claim based on claims that defendant stared at plaintiff "lasciviously," asked her to marry him, gave plaintiff a "bear hug," and called plaintiff a name other than her own in front of the entire class); *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526, 534–35 (7th Cir.1993)( court affirmed district court's conclusion that supervisor's inappropriate conduct was not so severe or pervasive as to create a hostile work environment where he touched and rubbed plaintiff's legs, pulled plaintiff into a doorway attempting to kiss her, and lurched at her as if to grab her).

■ In the present case, plaintiff has not shown that the events complained of occurred with any frequency or severity. Plaintiff attempts to create an appearance of pervasiveness by asserting that Prof. Young frequently called her "Monica" and made "Monica-related comments" through the entire Fall 1998 semester. However, according to plaintiff's own deposition testimony, Prof. Young did not start calling her "Monica" until the third week of classes. Furthermore, plaintiff missed two and a half weeks of classes for her brother's bar mitzvah in October. Finally, in the beginning of November, Prof. Young

missed one full week of classes to make a trip to Japan. Considering that there are approximately 14 weeks in each semester, the inappropriate conduct could have occurred only for about half of the semester. Taking all the evidence into account, the court finds that alleged conduct constitutes sporadic and infrequent contact which is insufficient to establish a hostile environment claim. *See Baskerville v. Culligan International Co.,* 50 F.3d 428, 430 (7th Cir.1995)(holding that nine comments over a seven month period could not "reasonably be thought to add up to sexual harassment").

■ Even though Professor Young's conduct is highly offensive and obviously inappropriate, it does not rise to the level of "actionable sexual harassment." The Supreme Court has stated that Title VII is not a "general civility code" designed to purge the workplace of all vulgarity. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Occasional vulgar banter, even if tinged with sexual innuendo, does not create a cause of action for sexual harassment. *See Baskerville,* 50 F.3d at 428. While Prof. Young's conduct is improper and politically incorrect, it does not constitute sexual harassment.

■ Plaintiff not only fails to show that the conduct complained of occurred with any frequency or severity, but she also cannot demonstrate that this conduct interfered with her educational progress. Even though plaintiff alleges that her educational experience was disrupted, her allegations are not supported by the submitted evidence. Plaintiff's cumulative GPA during her community college enrollment and before enrolling at SUNY New Paltz was 2.38. While at SUNY New Paltz, plaintiff earned a 2.09 GPA. Subsequent to her enrollment at SUNY New Paltz, plaintiff's GPA was 2.5 after her first semester

at Pace University. Considering that plaintiff's grades at SUNY New Paltz were consistent with the grades that she received at her community college, as well as with those she earned at Pace, a reasonable jury, based on this information alone, may not conclude that alleged conduct interfered with plaintiff's educational progress or academic performance.

Because plaintiff failed to establish that the alleged conduct occurred with any frequency or severity, that it was threatening to the plaintiff, or that it interfered with her educational progress, plaintiff failed to establish the essential elements of her hostile environment claim. Therefore, defendant is entitled to summary judgment on plaintiff's Fourteenth Amendment equal protection claim.

B. *Fourteenth Amendment Equal Protection Claim Against Prof. Brownstein, Dean Varbero, and Dean Benjamin*

 As a prerequisite to a § 1983 claim against a defendant in a supervisory capacity, a plaintiff must allege that the defendant was directly or personally involved in the alleged constitutional deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The general doctrine of *respondeat superior* or vicarious liability does not suffice to impose liability for damages in a § 1983 action. *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A defendant in a supervisory position may be found personally involved in the deprivation of plaintiff's constitutional rights in a number of ways, such as:

> The defendant may have directly participated in the infraction ... A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong ... A supervisory official may be liable because he

or she created a policy or custom to continue ... Lastly, a supervisor official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams v. Smith,* 781 F.2d 319, 323 (2nd Cir.1986).

 In sum, a supervisory official will be held liable only if the official failed to remedy a violation after learning of it, created or allowed a policy to continue under which the violation occurred, or was grossly negligent in managing the subordinates. *See Keyes v. Strack,* 1997 WL 187368, at *3 (S.D.N.Y.1997).

 As more extensively discussed in connection with defendants' argument for summary judgment with respect to plaintiff's Title IX claim, the submitted evidence demonstrates that the individual defendants did not fail to remedy a violation after being notified of its existence and therefore, are not liable under § 1983. Furthermore, plaintiff cannot hold individual defendants liable by alleging that they created a policy or custom under which the violation occurred. Policy at SUNY New Paltz is made by the president's cabinet, not by the individual defendants. Individually, defendants have no power to change policy at SUNY New Paltz. Considering that defendants were not personally involved in the violation, and considering that they cannot be held liable for damages under § 1983 simply because they occupied high position of authority, defendant's motion for summary judgment with respect to a § 1983 equal protection claim is granted.

III. *Title IX Claim Against SUNY Defendants*

As previously discussed, plaintiff has failed to establish the essential elements

for a hostile educational environment claim on the basis of sexual harassment. Assuming *arguendo* that plaintiff had introduced sufficient evidence to support her claim, she still would not be able to prevail on her Title IX claim because there is no evidence that defendants were "deliberately indifferent" to her allegations.

Title IX of the Education Amendments of 1972 provides, in pertinent part:

[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 USC § 1681(a).

Recently, the Supreme Court reiterated that Title IX is enforceable through an implied private right of action against an institution and that monetary damages are available in such an action. *See Franklin v. Gwinnett Co. Pub. Sch.,* 503 U.S. 60, 65, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). However, not all sexual harassment gives rise to institutional liability. An educational facility will be liable to a student for acts of sexual harassment by a professor only if the student can demonstrate that (1) the institutional defendant had actual knowledge of alleged discrimination and (2) the official who had the authority to take corrective action to end the alleged discrimination was deliberately indifferent to the harassment and failed to respond reasonably. *See Gebser v. Lago Vista Independent Sch. Dist.,* 524 U.S. 274, 292, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

### A. Actual Knowledge of Discrimination

Actual knowledge of discrimination may be established by showing that an "educational institution possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Crandell v. New York Coll. of Osteopathic Med.,* 87 F.Supp.2d 304, 321 (S.D.N.Y.2000).

In the present case, plaintiff did not notify any school official about the alleged sexual harassment by Prof. Young until the end of the Fall 1998 semester, when plaintiff met with Dean Varbero. Consequently, the school cannot be held liable for any incidents of harassment that occurred prior to this meeting because the school lacked actual knowledge that the alleged sexual harassment was taking place. *See Flores v. Saulpaugh,* 115 F.Supp.2d 319, 322 n. 4 (N.D.N.Y. 2000)(Hurd, J.). However, once the plaintiff notified Associate Dean Varbero, the college is deemed to have actual notice of the alleged sexual harassment.

### B. Deliberate Indifference

In addition to actual knowledge, the Supreme Court also requires that an educational institution act with deliberate indifference to its knowledge of sexual harassment before it can be liable under Title IX. *See Gebser,* 524 U.S. at 277, 118 S.Ct. 1989. An educational facility is deliberately indifferent if it makes "an official decision not to remedy the situation." *Id.* at 288, 118 S.Ct. 1989. A plaintiff does not need to prove that defendant's action or inaction was taken "maliciously or sadistically for the very purpose of causing harm." *Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 141 (2d Cir.1999). Rather, deliberate indifference can be found where defendant's response to harassment, or lack thereof is clearly unreasonable in light of the known circumstances. *See Davis,* 526 U.S. at 648, 119 S.Ct. 1661.

In the present case, the college officials reasonably responded to plaintiff's com-

plaint concerning Prof. Young's offensive behavior. Plaintiff communicated her claims of sexual harassment to Dean Varbero for the first time at the end of the Fall 1998 semester and the college officials took the following steps to remedy the situation: (1) the plaintiff was instructed to provide a written complaint; (2) the college officials met prior to receiving the written complaint; (3) the Dean, Associate Dean and Department Chair met with Prof. Young the day after the written complaint was received; and (4) Prof. Young resigned approximately one month from the date plaintiff submitted her written complaint in February 1999. The actions taken by the college officials to remedy the situation are reasonable and prompt considering that plaintiff complained at the end of the semester, which was followed by a semester break when students and faculty were away. Furthermore, plaintiff did not have any classes with Prof. Young after December 8, 1998. Taking all the circumstances into account, a reasonable jury could not conclude that the actions of the college officials amounted to deliberate indifference. Accordingly, summary judgment on plaintiff's Title IX must be granted.

## IV. *State Law Constitutional Tort Claim Against Prof. Young, Prof. Brownstein, Dean Varbero, and Dean Benjamin*

Article I, Section 11 of the New York State Constitution provides in relevant part:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any for, corporation, or institution, or by the state or any agency or subdivision of the state.

In *Brown v. State*, 89 N.Y.2d 172, 190, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), the New York State Court of Appeals implied a private right of action under the New York State Constitution similar to an individual's private right of action under 42 U.S.C. § 1983 for violations of the United States Constitution. In analyzing claims brought as state constitutional torts, the Court of Appeals applies federal Fourteenth Amendment standards. *Id.*

As previously discussed, plaintiff failed to establish that Prof. Young violated the Equal Protection Clause of the Fourteenth Amendment by sexually harassing her. Considering that plaintiff failed to establish a violation of a federally protected right and the same standard applies for state equal protection claims, summary judgment must be granted in favor of Prof. Young.

Furthermore, plaintiff may not hold individual defendants liable in their supervisory position unless those defendants were deliberately indifferent to her complaints of discrimination and their indifference was equivalent to an intent for discrimination to occur. As discussed in connection with plaintiff's Title IX and § 1983 claims, the reasonable response of individual defendants to plaintiff's complaint about Prof. Young did not, as a matter of law, amount to an intent that any discrimination occur. Consequently, plaintiff has no constitutional tort cause of action against individual defendants and they are entitled to summary judgment on this claim.

## V. *New York State Human Rights Law Claim Against Prof. Young, Prof. Brownstein, Dean Varbero, and Dean Benjamin*

New York's State Human Rights Law ("HRL") makes it an unlawful discriminatory practice for any person to aid, abet,

incite, compel or coerce the doing of any of the acts forbidden under the HRL or attempting to do so. Executive Law § 296(6). The statute prohibits any agent or employee of a place of public accommodation from withholding or denying any person the accommodations, advantages, facilities or privileges of such place on account of person's sex. Executive Law § 296(2)(a). However, the statute explicitly excludes colleges and universities from the definition of places of public accommodations. Executive Law § 292(9). Additionally, while the statute prohibits discrimination in certain colleges, it does not prohibit discrimination based on sex. Executive Law § 296(4).

■■■ In order to succeed on a claim based on a violation of the HRL, plaintiff has to identify the section of the law that has been allegedly violated. The plaintiff's main contention is that she suffered discrimination on account of her sex. A close examination of HRL, however, reveals that none of its provisions prohibit discrimination by a state college against a student on the basis of sex. The conduct alleged by plaintiff, even if true, is not conduct prohibited by statute. Consequently, plaintiff has no cause of action against defendants based upon the "aid or abet" language of the statute.

Even if the plaintiff could demonstrate that the HRL applied to her case, in order to succeed on her claim against Prof. Brownstein, Dean Varbero, and Dean Benjamin, she would still have to demonstrate that these individual defendants actually participated in the discriminatory conduct. *See Tomka v. Seiler,* 66 F.3d 1295, 1305 (2d Cir.1995). Plaintiff's HRL claim is based upon allegations that the individual defendants adopted policies designed to frustrate the bringing of sexual harassment complaints against faculty members. Plaintiff has no evidence to support these allegations. Considering that "sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact," the individual defendants are entitled to summary judgment on plaintiff's HRL claim. *See Shumway v. United Parcel Serv. Inc.,* 118 F.3d 60, 65 (2d Cir.1997).

## VI. *Ministerial Neglect Claim Against Prof. Brownstein, Dean Varbero, and Dean Benjamin*

A public employee's ministerial acts, i.e., "conduct requiring adherence to governing rule, with a compulsory result," may subject the public employer to liability for negligence. *See Tango v. Tulevech,* 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 459 N.E.2d 182 (1983). However, not every ministerial breach by a governmental employee necessarily gives rise to municipal liability. According to the New York State Court of Appeals, the ministerial wrong simply removes the issue of governmental immunity from the case. *See Lauer v. City of New York,* 95 N.Y.2d 95, 115, 711 N.Y.S.2d 112, 733 N.E.2d 184 (2000). Plaintiff must still prove the existence of an essential element of any negligence case—duty. *Id.* at 100, 711 N.Y.S.2d 112, 733 N.E.2d 184. For "without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Id.* Furthermore, the duty breached by the defendants must be more than that owed to the public in general. *See Florence v. Goldberg,* 44 N.Y.2d 189, 195, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978).

In the present case, plaintiff asserts that federal law requires all administrators and supervisors to notify the Affirmative Action Office of any student complaint of sexual harassment as soon as complaint received. The statute provides in pertinent part:

Each recipient shall designate at least one employee to coordinate its efforts to comply with and carry out responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part or alleging any actions which would be prohibited by this part. The recipient shall notify all its students and employees of the name, office address and telephone number of the employee or employees appointed pursuant to this paragraph.

34 CFR § 106.8.

■ The express statutory language indicates that plaintiff is incorrect in her interpretation of the statute. The statute does not require individual defendants to report plaintiff's sexual harassment complaint to the "designated employee," i.e., Affirmative Action Office; the statute simply requires the college to have such an employee in place. Considering that the statute does not impose upon individual defendants any duty to report received sexual harassment complaints, plaintiff's claim for ministerial neglect must fail as a matter of law.

■ Furthermore, plaintiff may not succeed on her ministerial claim by asserting that individual defendants violated federal and state law because they did not handle her complaint in a prompt and effective manner. As discussed in connection with plaintiff's Title IX and § 1983 claims, these assertions are without merit. Additionally, plaintiff submitted no evidence suggesting that handling the complaint through the Affirmative Action Office would have resulted in a more efficient resolution of the problem and less injury to the plaintiff. Considering that the individual defendants' conduct with respect to the plaintiff's sexual harassment complaint did not constitute "tortious" breach of min-isterial duty, plaintiff's claim of ministerial neglect must fail.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motions for summary judgment are **GRANTED** and the complaint is hereby **DISMISSED** in its entirety. It is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum—Decision and Order upon the parties by regular mail.

**IT IS SO ORDERED.**